*In re* MARRIAGE OF MAXINE KAPLAN, f/k/a Maxine Goldman, Petitioner-Appellant, and ROBERT H. GOLDMAN, Respondent-Appellee.

Fourth District  No. 4—92—0618

Argued March 24, 1993.—Opinion filed May 6, 1993.—
Rehearing denied June 7, 1993.

STEIGMANN, P.J., dissenting.

Allen J. Oehlert (argued), of Loewenstein, Hagen, Oehlert & Smith, P.C., of Springfield, for appellant.

Patrick J. O'Hara (argued), of Cavanagh & O'Hara, of Springfield, for appellee.

JUSTICE LUND delivered the opinion of the court:

The crux of this appeal is whether defendant Robert H. Goldman should be required to pay costs and reasonable attorney fees of peti-

tioner Maxine K. Goldman, the prevailing party. We say yes. The facts are basically uncontested.

The marriage of Robert and Maxine was dissolved in January 1987. Brian, only child of the marriage, was born December 20, 1972. In March 1991, both parties agreed to an order modifying the dissolution judgment and part of the modifications provided:

"Plaintiff [(petitioner)] and Defendant [(respondent)] shall each pay one-half of the post-secondary expenses for BRIAN GOLDMAN in a program leading to a baccalaureate degree (or equivalent); said expenses shall include tuition, room and board, supplies, necessary travel, books, fees, and living expenses (including living expenses between school terms). The parties will encourage BRIAN GOLDMAN to have employment during summer vacations and to apply earnings from same to his living expenses. Each party shall promptly pay (within 30 days of presentment of a statement for said expenses) his or her share of said expenses by payment to the institution or another entity; payment may also be made, as appropriate, by payment from [respondent] to [petitioner] for payment of said expenses that [petitioner] has paid or has made arrangements to pay (copies of all statements or receipts shall be furnished by [petitioner] to [respondent]). (In this event, the parties shall cooperate in the preparation and filing of a suitable withholding order if a regular 'stream' of expense money is most suitably channelled through [respondent] to BRIAN GOLDMAN.) The parties concur in approving BRIAN GOLDMAN attending the California Maritime Academy; however, if Brian's plans change or he is not accepted at the Academy, then [petitioner] and [respondent] shall consult with each other and BRIAN GOLDMAN on a different suitable institution of higher education. The consent of each party shall be required for BRIAN GOLDMAN to attend an institution other than the California Maritime Academy, but neither party may unreasonably withhold consent from his attending another institution; in the event a party's consent is not given, this matter may be submitted to the Court for approval of the institution and a further order shall be entered mandating payment of one-half of the said education expenses by each party."

At the time this modification was adopted, both Robert and Maxine knew of the existence of a trust created in 1980 by Robert's mother. This trust provided, in pertinent part:

"The Trustee shall distribute to each of Settlor's grandchild who survive her the sum of Ten Thousand Dollars ($10,000.00), provided, however, that as to Settlor's grandson, Brian Harvey Goldman, if he survives Settlor and is less than twenty-one (21) years of age at the time of Settlor's death, his legacy of Ten Thousand Dollars ($10,000.00) shall, instead of being paid to him, be held by the Trustee in trust for Brian Harvey Goldman until he attains the age of twenty-one (21) years *** at which time all property in trust shall be paid to him ***. During the continuation of said trust, if the income and means available to the said Brian Harvey Goldman are insufficient for his reasonable care, support and education, including, but not limited to, a college education if such is deemed desirable by the Trustee, the Trustee may from time to time pay him so much of the income, and if that be insufficient, then also so much of the principal[,] as will, when added to such other income and means, be sufficient to provide him with such care, support and education."

Pursuant to the March 1991 modified judgment of dissolution order, Robert and Maxine each became responsible for $4,609.50 of Brian's 1991-92 academic-year expenses totaling $9,219. Maxine paid some of the education expenses directly to Brian's school and, at Robert's request, directly channeled $2,533 of her $4,609.50 through him. However, unknown to Maxine and Brian, Robert had engineered an arrangement whereby the trustee of Brian's trust, a bank, would pay Brian's expenses directly to the school. Brian's trust paid $6,535 directly to the school for the first $6,535 of expenses incurred by Brian for his education during the 1991-92 academic year. Thus, payments from Brian's trust covered obligations of both Robert and Maxine toward these expenses. Robert kept the $2,533 Maxine paid directly to him.

In March 1992, Brian received a tax letter from the trustee of his trust which informed him that his trust had made distributions on his behalf during the past year. This was the first time either Maxine or Brian learned that Brian's trust, not respondent's trust, had made payments for Brian's college expenses. Also during this time period, a dispute arose over how much Robert should have paid for Brian's living expenses. Thus, Maxine commenced a contempt proceeding against Robert in the trial court. Robert agreed in this proceeding to reimburse Brian's trust, but the trial court was required to review the living-expense issue and the question of who was responsible for the attorney fees and costs expended by Maxine.

On July 15, 1991, the trial court entered an order incorporating the reimbursement provisions and the following finding:

"4. That ROBERT GOLDMAN is not in contempt of the Judgment of Dissolution as modified by Order dated March 5, 1991, inasmuch as said Order does not specify the source of the payments for BRIAN'S educational expenses;

5. Based upon the evidence presented, a reasonable sum for living expenses for BRIAN is $180.00 per month and ROBERT GOLDMAN is ordered to pay one-half of said sum to BRIAN each month."

The order of the court required Robert to repay the trust, together with interest and other charges. Payment of $90 per month for living expenses was ordered. The court denied an order of contempt, but prohibited use of Brian's trust funds by Robert to pay Robert's share of the school expenses. Each party was required to pay his or her own attorney fees.

## ATTORNEY FEES

The authority for post-high school and post-age-of-majority education expense comes from section 513 of the Illinois Marriage and Dissolution of Marriage Act (Act), which provides, in relevant part:

"The Court also may make such provision for the education and maintenance of the child or children, whether of minor or majority age, out of the property and income of either or both of its parents as equity may require, whether application is made therefor before or after such child has, or children have, attained majority age. The authority under this Section to make provision for education and maintenance extends not only to periods of college education or professional or other training after graduation from high school but also to any period during which a child of the parties is still attending high school, even though he or she attained the age of 18. In making such awards, the court shall consider all relevant factors which shall appear reasonable and necessary, including:

(a) The financial resources of both parents.

(b) The standard of living the child would have enjoyed had the marriage not been dissolved.

(c) The financial resources of the child." Ill. Rev. Stat. 1991, ch. 40, par. 513.

■ The parties agreed as to the equal division of Brian's post-high school education expenses and, in doing so, were aware of the Ada Goldman trust for the benefit of Brian. The financial resources of

both parents were obviously considered, as were the child's resources. If the Ada Goldman trust was to be involved, the agreement and order would have so provided. The suggestion that Robert could use Brian's trust fund to pay *Robert's obligation* for the education expenses is totally inconsistent with the provision of section 513 of the Act providing for payment "out of the property and income of either or both of [the] parents." Ill. Rev. Stat. 1991, ch. 40, par. 513.

As stated, the modified education order was entered on March 9, 1991. Less than 10 weeks later, pursuant to requests from Robert, the trustee made payments for Brian's education. In reviewing Robert's actions, it is clear he never intended to comply with the March 9, 1991, order. He had advised Maxine that the complete payments were being made from his (Robert's) trust, and he had the gall to request that Maxine pay her half of the college fees directly to him. She honored his request to the tune of $2,533. Not only did he not make the college education payments, but he increased his personal assets by $2,533.

The trial court held lack of contempt because the "Order does not specify the source of the payments." This decision ignores the provisions of section 513 of the Act and the fact that if Robert's share could be paid out of the trust, Maxine was entitled to the same benefit. The decision of the trial court was against the manifest weight of the evidence.

Section 508(b) of the Act provides:

> "In every proceeding for the enforcement of an order or judgment when the court finds that the failure to comply with the order or judgment was without cause or justification, the court shall order the party against whom the proceeding is brought to pay the costs and reasonable attorney's fees of the prevailing party." Ill. Rev. Stat. 1991, ch. 40, par. 508(b).

As to the existence of cause or justification for Robert's failure to pay his share, we must consider the modification provisions of section 510 of the Act, which provides, in relevant part:

> "[T]he provisions of any judgment respecting maintenance or support may be modified only as to installments accruing subsequent to due notice by the moving party of the filing of the motion for modification and only upon a showing of a substantial change in circumstances." Ill. Rev. Stat. 1991, ch. 40, par. 510.

If Robert's financial condition had changed so that he was unable to pay his share of the school expenses, then his recourse was the court, not the wrongful use of his son's trust funds. We conclude the facts require a finding that Robert's actions were without cause or

justification and that an award of attorney fees under section 508(b) of the Act was mandatory.

### LIVING EXPENSES

■ The determination of Robert's and Maxine's shares of Brian's living expenses was complicated because Brian lived with his mother in California. A factor necessarily considered was Brian's employment, which resulted in income of approximately $6,500 per year. After considering the evidence presented to the trial court, we find the decision determining living expenses was not against the manifest weight of the evidence.

### CONCLUSION

The denial of attorney fees is reversed, and the cause shall be remanded to the trial court for determination of those fees.

Reversed and remanded.

McCULLOUGH, J., concurs.

PRESIDING JUSTICE STEIGMANN, dissenting:

Because the behavior of respondent Robert Goldman is so odious—after all, it is not every day that one can breach one's fiduciary duty to both one's mother and one's son by performing the same reprehensible act—I find it distasteful to dissent. Yet, at the risk that my dissent be viewed as somehow supporting the outrageous behavior of Robert Goldman, I dissent nonetheless.

Although the majority opinion does a masterful job of constructing an argument showing that Robert Goldman violated an order of the court, careful analysis reveals that he did no such thing. In short, the trial court correctly found that Robert Goldman was not in contempt of the order the court entered March 5, 1991, because "said Order does not specify the source of the payments" Robert Goldman was to use for his son's educational expenses. The question the majority opinion cannot answer and still adhere to its holding is the following: If Ada Goldman (Robert's mother and the settlor of the trust in question) had been alive and had Robert asked her to pay Brian's school directly for Brian's educational expenses because Robert did not have the financial resources to make those payments, and if she in fact did so, would the majority still conclude that Robert was in contempt of court because "he had not made the payment 'out of [his] property,'" as the majority claims section 513 of the Act requires? Or,

in another hypothetical, if Robert Goldman had won the lottery and directed that some of his lottery proceeds be paid directly to the school to meet Brian's educational expenses, would the majority similarly hold that this also was a violation of the payment order?

The answers to the above questions make clear that this court ought not second-guess the trial judge's determination that Robert Goldman's conduct—however odious—did not violate any orders of the court. Simply because this court finds that conduct reprehensible is not a sufficient reason to reverse. The trial court obviously did not like it much either, and Robert Goldman may well face further sanctions—possibly even criminal—for his abuse of the trust his mother established.

When properly understood, the court order placed half of the financial responsibility for Brian's education on Robert Goldman. That order did not concern itself with the source of the funds Robert Goldman used to comply with the order's terms, nor should it have. Indeed, in the typical dissolution case, the court and the parties are concerned that payment orders be complied with; usually, no one addresses (or cares in the slightest) how a party obtains the means to comply.

The court order in the present case meant that if Robert Goldman failed to take whatever steps were necessary to comply with his court-ordered obligation to ensure that half of Brian's educational expenses were paid (somehow, by someone), then the blame for this failure would fall on Robert Goldman, regardless of the reason. Any fraud or crime Robert Goldman used to ensure that his court-ordered obligation was met should be addressed directly on its own, not obliquely through a distorted construction of the trial court's orders.

Whatever the outcome in proceedings addressed *directly* to Robert Goldman's conduct regarding Brian's trust, the conclusion in the present case must be the same: because Robert Goldman did not violate any orders of the trial court in this dissolution proceeding, we must affirm the trial court's order denying attorney fees under section 508(b) of the Act. I respectfully dissent from the majority's failure to do so.